# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SAIED TADAYON and BIJAN TADAYON,
    *Plaintiffs,*

MAHIN TEHRANI,
    *Counterclaim defendant,*

    v.

DATTCO, INC.,
    *Defendant,*

SAUCON TECHNOLOGIES, INC.,
    *Intervenor defendant.*

No. 3:12-cv-01610 (JAM)

## OMNIBUS RULING RE PENDING MOTIONS

This is a patent case between two brothers, plaintiffs Saied and Bijan Tadayon, their mother, counterclaim defendant Mahin Tehrani, and two companies—DATTCO, Inc., and Saucon Technologies, Inc.—that the Tadayon brothers once claimed infringed their patent. This lawsuit is just one of several lawsuits brought by the Tadayons in federal courts up and down the Eastern Seaboard seeking to enforce their patent, which purports to reduce the radiation the human body absorbs from wireless communication. The Tadayons have alleged that numerous bus companies, such as defendant DATTCO, infringe their patent when they use onboard wi-fi technology. Most of these cases have settled, and none have reached a final judgment on the merits.

Saucon is one of several companies that supply onboard wi-fi systems to bus companies. Following previous lawsuits that implicated their technology, Saucon sought reexamination of the Tadayons' patent in the United States Patent and Trademark Office ("USPTO"). As a result of this reexamination, many key claims of the Tadayons' patent were invalidated. The brothers

then entered a "Stipulation of Covenant" promising not to sue defendants for infringement and sought leave to withdraw their infringement claim. Defendants, however, have continued to press their counterclaims. These include claims of patent invalidity, patent misuse, inequitable conduct, conspiracy to commit fraud, and a claim for attorney's fees under 35 U.S.C. § 285. They also bring inequitable conduct and conspiracy claims against Tehrani, the alleged inventor of the patent. The Tadayons and Tehrani have moved to dismiss these counterclaims on numerous theories, and Tehrani moves to dismiss for lack of personal jurisdiction. *See* Docs. #107, #110.

As to the counterclaims for patent invalidity, patent misuse, and inequitable conduct, I conclude that the Tadayons' stipulation of covenant moots these counterclaims. I further conclude, however, that two of the counterclaims—for conspiracy to commit fraud and for an award of attorney's fees—are not moot and that defendants have plausibly alleged grounds for relief against both the Tadayons and Tehrani. In addition, I conclude that the Court has personal jurisdiction over Tehrani, that it would not be appropriate to transfer this action to another federal court, and that plaintiffs are not entitled to a more definite statement.

## BACKGROUND

Saied and Bijan Tadayon immigrated to the United States from Iran with their mother, Mahin Tehrani. They both attended Cornell University and the Georgetown University Law Center, and both have PhDs in the sciences. Saied is a registered patent attorney, and Bijan a registered patent agent.  Tehrani was a high school science teacher in Iran. Tehrani and the Tadayons live at the same address in Maryland.

DATTCO is a bus company that operates in the New York and New England areas, and offers onboard wi-fi to its customers. Saucon is a wireless provider that installs and maintains the routers that produce this wi-fi.

In 2001, with the assistance of Bijan, Tehrani submitted an application to the USPTO for a patent entitled, "Safe Method and System for Mobile or Wireless Computing or Communication Devices." The USPTO granted Tehrani U.S. Patent 7,031,657, (the "'657 patent") consisting of 27 claims, and she almost immediately assigned it to Bijan. In May 2010, Bijan assigned half his interest in the patent to Saied.

The '657 patent describes a "new method and system . . . to drastically reduce the power absorbed by the body of the [users] of mobile or wireless computing or communication devices, such as cell phones." Doc. #1-1 at 2. In one version of the patented system, the wireless transmission uses multiple antennas, and the transmission passes through multiple stages, so that the antenna closest to the user "operates with an extremely low power for short distances." *Id.* In an alternative version, the same object is achieved by using varying frequencies, "selected from a range of frequencies corresponded to the low power of absorption of a specific human tissue or [] overall human body." *Id.* The patent is accompanied by pictures describing the invention and prior art, such as the following image:



Doc. #1-1 at 2.

Beginning in 2010, the brothers began litigating patent infringement lawsuits against bus companies that used on-board wi-fi.[1] It appears that many of these cases settled and that none reached a ruling on the merits. The Tadayons filed the instant case in November 2012, alleging that DATTCO infringed claims 1, 2, 3, 4, 9, 11, 16, 17, 19, 24 and 25 of the '657 patent. Doc. #1 at 3. Defendant Saucon sought leave to intervene, which the Court granted. Docs. #21, #30.

The Tadayons had previously filed a lawsuit against Saucon in the District of Maryland, which was dismissed for lack of personal jurisdiction, and they also sued other Saucon clients. Following these suits, Saucon filed a *Request for Inter Partes Rexamination* of the '657 patent with the USPTO in July 2011, challenging claims 1, 2, 11-15, 21 and 25. On reexamination, all the claims except for Claim 21[2] were rejected for obviousness. The rejections were affirmed by

---

[1] Cases concerning the '657 patent include: *Tadayon v. Coach USA et al.*, 10-cv-882 (D.D.C.) (filed May 2010); *Tadayon v. Greyhound*, 10-cv-1326 JOB (D.D.C) (filed Aug. 2010); *Tadayon v. Saucon*, 11-cv-62 (D. Md.) (filed Jan. 2011) (dismissed for lack of personal jurisdiction); *Tadayon v. Execubus*, 11-cv-213 (E.D. Va.) (filed

[2] Claim 21 provides for:

> A system for mobile or wireless communication or computation, said system comprising:
>
> first unit comprising  first antenna, wherein  said first unit is mobile or wireless;
>
> last unit comprising last antenna, wherein said last unit is mobile or wireless; and

the Patent Trial and Appeal Board and the Federal Circuit. *Tadayon v. Saucon*, 611 Fed. App'x 983 (Fed. Cir. 2015).

Defendants DATTCO and Saucon have filed counterclaims against both the Tadayons and their mother, Tehrani, alleging (1) invalidity of the '657 patent; (2) patent misuse; (3) inequitable conduct; (4) conspiracy to commit fraud; and (5) that this is an exceptional case for attorney's fees under 35 U.S.C. § 285. Docs. #17, #106.[3] They contend that the '657 patent is materially identical to Bluetooth technology that existed at the time of filing. They further contend that the Tadayons and Tehrani were well aware of this technology, and deliberately withheld it in order to defraud the USPTO and acquire a patent that they could use to extort purported infringers through lawsuits.

Following the Federal Circuit's ruling, the Tadayons entered a Stipulation of Covenant promising "unconditionally and irrevocably . . . not to sue and to refrain from making any claim or demand against" defendants or any related business entities or customers of defendants for infringement of the '657 patent.[4] Doc. #106 at 2. The Tadayons filed a motion to dismiss all counterclaims against them or, alternatively, for a more definite statement. Doc. #107. Tehrani also filed a motion to dismiss or for a more definite statement, and also alternatively sought

---

        said first unit transmits data to said last unit, wherein said data is transmitted  from  said first antenna  to said last antenna,
        wherein  said  last  unit  transmits  said  data  to a location outside said system,
        wherein said data is transmitted  from said last antenna to said location  outside said system,
        wherein said first unit is attached to one of the belt, purse, briefcase,  jacket, clothing,  or suitcase of a user,
        wherein  said last unit is attached  to said first unit, and
        wherein at the time of transmission,  if said first unit is not separated  from  said last unit by a user, then said first unit, said last unit, or both warn said user, by means of at least one of sound or display.

Doc. #1-1, at 11.
    [3] Unlike Saucon, DATTCO does not allege an exceptional case in a separate count, but instead seeks attorney's fees under this theory in its request for relief. Doc. #17 at 14.
    [4] The Tadayons represented at oral argument that they would extend this promise to a covenant not to seek to enforce the '657 patent against anyone, anywhere.

transfer to another district. Doc. #109. She further claims this Court has no personal jurisdiction

over her, as a longtime Maryland resident who has had no significant interactions with

Connecticut.

**DISCUSSION**

The principles governing this Court's consideration of a Rule 12(b)(6) motion are well

established. First, the Court must accept as true all factual matter alleged in a complaint and draw

all reasonable inferences in a plaintiff's favor. *See Johnson v. Priceline.com, Inc.*, 711 F.3d 271,

275 (2d Cir. 2013). But "'[t]o survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

*TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)). A motion to dismiss a counterclaim is analyzed under the same

framework. *See Held v. Silver*, 2013 WL 5658255, at *2 (D. Conn. 2013).

### *Invalidity, Patent Misuse, and Inequitable Conduct*

The first group of counterclaims defendants bring includes invalidity, patent misuse, and

inequitable conduct. Plaintiffs contend that these claims are now mooted by their very broad

Stipulation of Covenant.

Invalidity, patent misuse, and inequitable conduct are all common counterclaims to patent

infringement actions. *See Handbook of Intell. Prop. Claims & Remedies*, § 6.07 (2015)

(describing common counterclaims for "patent infringement targets"). For the purposes of the

instant case, these claims share one critical feature: If defendants were to prevail on any of these

claims, the remedy would be a declaration that the '657 patent is unenforceable. Counterclaim I,

seeking a "declaratory judgment of invalidity," on its face seeks nothing other than such a

declaration. Doc. #106 at 17. When successfully litigated, a defense of patent misuse "results in

6

rendering the patent unenforceable," but "does not . . . result in an award of damages." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997); *see Max Impact, L.L.C. v. Sherwood Grp., Inc.*, 2011 WL 507600, at *5 (S.D.N.Y. 2011). Further, if a defendant prevails on a counterclaim of inequitable conduct, the remedy again is a declaration of unenforceability, not damages. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285-87 (Fed. Cir. 2011).

A claim becomes moot under Article III "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013). There is no "case or controversy" under Article III when there is no longer "any actual controversy about the plaintiffs' particular legal rights." *Id.* at 727.

The Tadayons' Stipulation of Covenant guarantees that they will not seek to enforce the patent against defendants, their affiliates or clients. In *Already,* the Supreme Court addressed in the trademark context whether a similar stipulation mooted a claim for declaratory relief. Nike had sued Already, alleging that the company had infringed its trademark for Air Force 1 shoes. Already filed a counterclaim seeking a declaration that the trademark was invalid. Before a ruling on the merits, Nike dismissed its claims with prejudice and entered a "Covenant Not to Sue," which promised not bring any trademark or unfair competition claim against Already based on either its existing footwear designs or any "colorable imitation" it would make of those shoes. 133 S. Ct. at 725-26.

The Supreme Court observed that, under the voluntary cessation doctrine, the dismissal and covenant would moot the case if Nike could show that "the allegedly wrongful behavior" could not "reasonably be expected to recur[.]" *Id.* at 727. Because the covenant was so broad,

unconditional, and irrevocable, the Court found it was "absolutely clear" that there could be no reasonable expectation of the challenged activity recurring. *Id.* at 728-29.

This reasoning applies with equal force to defendants' counterclaims seeking declaratory relief. The Tadayons have entered a covenant every bit as broad as that entered by Nike. Accordingly, defendants can have no reasonable expectation that they or any of their affiliates will be subject to any claims related to the '657 patent. There is no controversy for Article III purposes over those counterclaims that only seek declaratory relief. I will therefore dismiss Counterclaims I, II and III.[5]

### *Exceptional Case under 35 U.S.C. § 285*

Defendants further allege that this is an exceptional case under 35 U.S.C. § 285, and thus that they are entitled to an award of attorney fees. Under this provision, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* As the Supreme Court has explained, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or an unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). A case may fall under this umbrella where the patent holders commit "fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation . . . or like infractions." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012). Defendants have plausibly alleged that the Tadayons and Tehrani knowingly withheld information that would have made clear to the USPTO that their purported invention was unpatentable for obviousness, and thus that they fraudulently obtained the '657 patent. Defendants further allege plausibly that plaintiffs engaged in a pattern of meritless litigation.

---

[5] Though the counterclaim for inequitable conduct will be dismissed, defendants may of course adduce evidence tending to show inequitable conduct in support of their claim for attorney's fees under 35 U.S.C. § 285. *See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001).

Further, since defendants seek monetary compensation, there remains a live controversy over this issue, and the Tadayons' Stipulation of Covenant does not moot the claim under § 285. *See Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242 (Fed. Cir. 2008) ("Even if filing such a covenant may divest the court of jurisdiction over a declaratory judgment action regarding these patents, under our precedent the district court retained independent jurisdiction over Monsanto's request for attorney fees under 35 U.S.C. § 285.") (internal citations omitted); *Novartis Corp. v. Webvention Holdings LLC*, 2015 WL 3901639, at *3 (D. Md. 2015) (reaching the same conclusion post-*Already*). I therefore conclude that, at this stage, defendants have alleged sufficient facts for their exceptional case claim to survive.

### Conspiracy to Commit Fraud

Defendants further claim that the Tadayons and Tehrani engaged in a civil conspiracy to commit fraud by deliberately withholding material references from the USPTO and then engaging in vexatious litigation. A civil action for conspiracy requires "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Macomber v. Travelers Prop. & Cas. Corp.*, 277 Conn. 617, 635-36 (2006). It requires an "express or tacit agreement" to act. *Harp v. King*, 266 Conn. 747, 781 (2003).

Conspiracy is not a stand-alone claim, but must be pled with the accompanying wrong, which in this case is fraud. In Connecticut, "[t]he elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Weinstein v. Weinstein,* 275 Conn. 671, 685

(2005). Further, any claim of fraud or mistake involving "conditions of mind" must be pled "with particularity" under Fed. R. Civ. Proc. 9(b), though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed R. Civ. Proc. 9(b).

In analyzing whether a complaint alleging fraud will survive a motion to dismiss, a court must consider "plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). The facts alleged must create a "strong inference of scienter," which is "cogent and at least as compelling as any opposing inference one could draw." *Id.* at 324

Defendants allege that the Tadayons and Tehrani were all involved in the patent application. They further allege that "the Tadayons and Tehrani were aware, during the prosecution of the application that resulted in the '657 patent, of the sale of Bluetooth products" and that "the Tadayons and Tehrani did not disclose to the original patent examiner the existence of the relevant Bluetooth technology." *See* Doc. #106, ¶¶ 31, 32. The Tadayons and Tehrani claim that these allegations are conclusory. They admit that relevant prior art existed, was material, and was not disclosed, but they claim that Saucon has produced no factual allegations to show that the non-disclosure was intentional, or that they had any intention to mislead the patent examiner.

The core question here is whether the alleged facts are sufficient to state a claim, or whether they are "merely consistent" with a conspiracy to commit fraud. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). I conclude that the facts alleged more plausibly suggest a conspiracy to commit fraud than any alternative explanation. If, as defendants allege, the materiality of the Bluetooth technology would have been obvious to anyone knowledgeable in the field, that would provide strong evidence of improper intentions on the part of the Tadayons and Tehrani. This suggestion is bolstered by the Tadayons' extensive litigiousness, and the

invalidation of many claims of the patent by the USPTO. Another minor factor that weighs in
favor of conspiracy is the fact that the Tadayons have never sought to actually create the device
their patent describes. While of course patent holders are not required to put their ideas into
practice to gain the protection of the courts, this fact makes more plausible an inference that they
had no real intention to create anything, but instead simply sought to enrich themselves through
extortionary lawsuits. The conspiracy claims will survive at least through the pleading stage.

### *Personal Jurisdiction and Venue as to Tehrani*

Tehrani contests this Court's personal jurisdiction over her. She is a resident of
Maryland, and outside of this lawsuit, has had no substantial contacts with the state of
Connecticut. Defendants counter that, because they allege Tehrani participated in the conspiracy
that led her sons to sue them in Connecticut, she is subject to this Court's jurisdiction.

A Connecticut court may statutorily exercise personal jurisdiction over a nonresident who
"commits a tortious act within the state." Conn. Gen. Stat. § 52-59b(a). To satisfy the
constitutional requirements for personal jurisdiction, a court must also conduct a "minimum
contacts" inquiry and a "reasonableness" inquiry. *Eades v. Kennedy, PC Law Offices*, 799 F.3d
161, 168-69 (2d Cir. 2015). Where, as here, "specific jurisdiction" is asserted, personal
jurisdiction will exist if "the defendant purposefully availed itself of the privilege of doing
business in the forum and could foresee being haled into the court there." *Id.* at 169. If the court
finds minimum contacts, "the defendant has to present a compelling case that the presence of
some other considerations would render jurisdiction unreasonable." *Id.*

Participants in a conspiracy are liable for all the acts co-conspirators take in furtherance
of the conspiracy. *See Macomber*, 277 Conn. at 636. When the complaining party has made a
sufficient showing that a conspiracy existed, a court may exercise jurisdiction based on the

actions of alleged co-conspirators. *See In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013). The required showing, however, is higher than the basic pleading standard. "To establish jurisdiction on a conspiracy theory, a plaintiff must: (1) make a *prima facie* factual showing of a conspiracy; [and] (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; . . . ." *In re LIBOR-Based Fin. Instruments Antitrust Litigation*, 2015 WL 6243526, at *29 (S.D.N.Y. 2015).

Defendants have alleged specific facts that warrant an inference that Tehrani participated in the conspiracy. They allege that she, despite insufficient scientific expertise, lent her name to the application for a fraudulent patent, and made false statements to the USPTO. Further, defendants conducted a deposition of Tehrani, in which she seemed ignorant of facts that would be needed to have created the invention on her own. There certainly could be innocent explanations for her testimony, not least that some questions may have been lost in translation to her as a non-English-speaker. But these facts, along with the Tadayons' history of lawsuits and the USPTO's decision on the '657 patent's reexamination, are together sufficient to satisfy the *prima facie* factual showing required at this stage.

I further conclude that there are no other factors that substantially weigh against this Court's exercise of jurisdiction over Tehrani. That she may have to travel from her home in Maryland to Connecticut for court proceedings is a minimal burden, and I am aware of no particular interest another state has in adjudicating this case, or any other fact that would render jurisdiction unreasonable. I therefore conclude this Court has jurisdiction over Tehrani.

Tehrani further moves to dismiss the case against her for improper venue or, alternatively, to transfer the case to the District of Maryland, where she resides. *See* Doc. #43 at 1. "A civil action may be brought in a judicial district in which a substantial part of the events . .

. giving rise to the claim occurred." 28 U.S.C. § 1391(b). In view that defendants allege that the very filing of this lawsuit was part of the conspiracy to commit fraud, a substantial part of the events giving rise to the claim occurred in Connecticut. I therefore find that venue in the District of Connecticut is proper.

A district court may also, in the interest of justice, transfer "any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). District courts have broad discretion in making determinations of convenience under § 1404(a). *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). I find that none of the facts alleged justify a transfer of venue. *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (describing the factors to be considered on a transfer motion). Saucon is located in Pennsylvania, and seeks to keep the suit in Connecticut, and DATTCO is located in Connecticut. Connecticut is a reasonable distance from Maryland, where the conspiracy was allegedly formed. Transfer to the District of Maryland would have a minimal effect on the convenience of parties and witnesses. Further, the interest of justice counsels in favor of keeping the case in this Court. The Tadayons originally brought this lawsuit in Connecticut, and years of litigation before this Court have followed. It would be inappropriate on these facts to transfer the case. Accordingly, I will deny Tehrani's motion to transfer the case to Maryland.

### *Motion for More Definite Statement*

The Tadayons and Tehrani also move for a more definite statement under Fed. R. Civ. P. 12(e). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* The Tadayons and Tehrani argue a more definite statement is warranted because (a) defendants incorporate all allegations made in Saucon's request for reexamination, a 158-

13

page document, and (b) that the term "false statements" is too vague to allow for an adequate response.

The purpose of a motion for more definite statement "is to remedy unintelligible pleadings." *Ming Li v. Colonial BT, LLC*, 2015 WL 5684060, at *2 (D. Conn. 2015). There is nothing unintelligible about defendants' pleadings, nor anything that should prevent the Tadayons or Tehrani from preparing an adequate defense. The Tadayons have pursued issues surrounding the '657 patent with the USPTO for many years. They surely understand the factual allegations contained in Saucon's reexamination application. Further, as is clear from the rest of the pleadings, the central allegations are that they intentionally omitted prior art in an attempt to defraud the USPTO. The argument that the term "false statements" is unclear is similarly unavailing. When the patent application was filed, Tehrani, with Bijan's assistance, stated that she was the first inventor and that she believed the invention was patentable. Doc. #114-1. Since this declaration is the only statement Tehrani made to the USPTO, it is clear these are the "false statements" she allegedly made. Because defendants have provided an adequately "short and plain statement," I will deny the motions for a more definite statement.

## CONCLUSION

Defendants' counterclaims for unenforceability, patent misuse, and inequitable conduct are moot in light of the Tadayons' covenant not to sue. These counterclaims must be dismissed. Defendants have otherwise sufficiently alleged conspiracy to commit fraud and that this is an exceptional case that may warrant an award of attorney's fees. Because of the plausibility of the conspiracy allegations, this Court has personal jurisdiction over Tehrani, and it would not be appropriate to transfer this case to another federal district.

Accordingly, I hereby GRANT the motions to dismiss (Docs. #107, #109) as to Counts I, II and III; and DENY the motions as to Counts IV and V of Saucon's counterclaims and Count IV of DATTCO's counterclaim. I also DENY the motions for a more definite statement and for transfer of venue. DATTCO may amend its counterclaims within 14 days to add a count alleging an exceptional case.

In addition, I GRANT Saucon's Motion for Leave to File Answer, Affirmative Defense and Counterclaims (Doc. #101), the Tadayons' Motion for Leave to Enter in the Record Plaintiffs' Stipulation of Covenant (Doc. #102), and the Tadayons' Motion to Withdraw Plaintiffs' Patent Infringement Claim with Prejudice (Doc. #108). The only remaining claims in this case are defendants' counterclaims alleging conspiracy to commit fraud and for attorney's fees under 35 U.S.C. § 285.

It is so ordered.

Dated at New Haven this 30th day of March 2016.

/s/ *Jeffrey Alker Meyer*_____
Jeffrey Alker Meyer
United States District Judge